# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. JONES, | ) Case No.: 1:12-cv-01963 LJO DLB (PC) |
| Plaintiff, | )<br>) FINDINGS AND RECOMMENDATIONS |
| | ) REGARDING DEFENDANTS' MOTION FOR |
| v. | ) SUMMARY JUDGMENT |
| S. NIEHUS, et al., | ) (Document 31)<br>) |
| Defendants. | ) THIRTY-DAY OBJECTION DEADLINE |
| | ) |
| | ) |
| | ) |
| | ) |

Plaintiff Mark A. Jones ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on December 3, 2012. Pursuant to the Court's screening order, this action is proceeding against Defendants Matta, Maxfield and Niehus for retaliation in violation of the First Amendment.

Defendants Niehus and Matta[1] filed this motion for summary judgment on June 4, 2015, based on Plaintiff's failure to exhaust his administrative remedies.[2] Plaintiff filed his opposition on July 2,

---

[1] This motion does not relate to the claims against Defendant Maxfield.
[2] Defendants provided Plaintiff with the required notice for opposing a motion for summary judgment.

1

2015, and Defendants filed their reply on July 8, 2015.  The motion is ready for decision pursuant to Local Rule 230(l).

## I.     LEGAL STANDARD

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings.  Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014).  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Albino, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS[3]

The situation started on September 14, 2007, when Plaintiff's wife attempted to visit him while he was at the California Substance Abuse Treatment Facility.  She was searched and detained with "negative result."  ECF No. 20, at 4.  IGI Officer Couch then told Plaintiff's wife that if she told Plaintiff and Plaintiff filed a grievance, he would be taken back to the SHU as a Black Guerilla Family

---

[3] The Court will only summarize the allegations against Defendants Niehus and Matta.

("BGF") gang member.  Plaintiff had been released from the SHU as an inactive gang member back in 2005.

On December 22, 2011, Defendant Niehus, acting IGI, and another IGI officer, searched Plaintiff's cell and took Plaintiff's phone book and a lot of his paperwork.  Plaintiff asked him why he was taking the paperwork, and Defendant Niehus said that he had received a phone call to investigate him and lock him up in the SHU.  Defendant Niehus told Plaintiff that he would return his property in a few days.

On December 23, 2011, Defendant Niehus and the same IGI officer returned to Plaintiff's cell. They called Plaintiff and his cellmate to the front separately.  When Plaintiff went to Defendant Niehus, he told Plaintiff that he received a phone call to investigate him and that he found an item to revalidate him as a BGF member.  However, Defendant Niehus told Plaintiff that he could "make that go away" if he worked for him as his informer.  Defendant Niehus then told Plaintiff that he would go back to the SHU if he didn't work for him.  Plaintiff asked Defendant Niehus what item he found in his property that would support validation, and Defendant Niehus told him "whatever he want[ed] it to be."  ECF No. 20, at 9.

Plaintiff was placed in Ad-Seg on February 2, 2012.  Defendant Niehus stated that he found a direct link between Plaintiff and a validated gang member.  On February 13, 2012, Plaintiff filed his first appeal asking why he was placed in Ad-Seg, as he had not received a lock-up order.

On February 16, 2012, Plaintiff was taken to ICC.  He was also told why he was placed in Ad-Seg and given the 1030 forms (Confidential Disclosure Form).

Plaintiff had already filed one grievance, so he waited until his first grievance was returned. Plaintiff's appeal was returned on February 28, 2012.  Plaintiff was instructed to submit a new appeal regarding the decision to keep him in Ad-Seg and provide the ICC 128-G (Classification Chrono) dated February 16, 2012.

While waiting for the ICC 128-G, Plaintiff filed a personnel complaint on February 29, 2012, concerning Defendant Niehus.  On March 6, 2012, Plaintiff was told that if he had an appealable issue, he needed to file a 602.

On March 7, 2012, Plaintiff filed a mixed appeal regarding gang affiliation and return of his property.

Plaintiff contends that Defendant Matta retaliated against him for filing a grievance by providing false information to make his arrest record look worse and have him transferred out of Corcoran State Prison.  On August 29, 2012, Plaintiff received his Chrono dated August 9, 2012, and authored by Defendant Matta.  Plaintiff believes that since August 9, 2012, Defendant Matta has done everything in his power to have Plaintiff transferred in retaliation for filing a staff complaint against him.

This continued even after Plaintiff found out that he was a high risk medical inmate, pursuant to a Chrono dated September 27, 2012.  Defendant Matta found a doctor to say that nothing was wrong with Plaintiff's heart so that he could be transferred to Pelican Bay's SHU.

Plaintiff was received at Pelican Bay's SHU on March 7, 2014.  On April 3, 2014, Plaintiff was sent out of Pelican Bay for medical reasons.

Plaintiff alleges that all of this transferring was to stop him from filing grievances on his gang affiliation.

III.     **UNDISPUTED MATERIAL FACTS**

From December 22, 2011, through December 3, 2012, Plaintiff submitted only one appeal, CSPC-6-12-05795, that was received and reviewed through the Third Level.  Pacillas Decl. ¶ 8, Ex. A; Voong Decl. ¶ 11, Ex. M.  This appeal alleged that his endorsement to Pelican Bay's SHU was done in retaliation by Defendant Maxfield for filing a grievance against her.  Voong Decl. ¶ 11, Ex. M.

*Defendant Niehus*

On December 22, 2011, Defendant Niehus began investigating Plaintiff to revalidate him as an active member of the BGF prison gang.  Defendant Niehus searched Plaintiff's cell on December 22, 2011, and confiscated documents belonging to Plaintiff.  Plaintiff alleges that this was done in retaliation for his filing and maintaining a lawsuit concerning an incident that occurred in September 2007.  ECF No. 20, at 4-5, 9-10.

Plaintiff was placed in Ad-Seg on February 2, 2012.  ECF No. 20, at 6.

On February 13, 2012, Plaintiff filed a grievance regarding the reasons he was placed in Ad-Seg. The appeal does not reference Defendant Niehus. The appeal was returned on February 28, 2012, and it was never accepted for review at any level. ECF No. 20, at 12; Pacillas Decl. ¶10, Ex. B.

On February 29, 2012, Plaintiff submitted a staff complaint against Defendant Niehus to the Investigative Services Unit. The packet of documents Plaintiff submitted was returned by the appeals coordinator on March 6, 2012. The documents and screen-out letter were given Log Number CSPC-7-12-00910. The letter informed Plaintiff that the packet of documents was not considered an appeal, but that if he had appealable issues, he was required to submit an appeal form. Plaintiff did not do so and this appeal was never accepted at any level of review. Pacillas Decl. ¶ 11, Ex. C.

On March 7, 2012, Plaintiff submitted an appeal requesting that he be shown the information Defendant Niehus used as direct link sources on the Confidential Information Disclosure Form. He also requested that his property be returned. On March 13, 2012, Plaintiff's appeal, Log Number CSPC-7-12-01213, was rejected and returned. Plaintiff was instructed to provide proof that he attempted to resolve the issue with Defendant Niehus via the CDCR 22 form process. He was also told that his property issue needed to be appealed separately from his custody staff issue. Plaintiff did not resubmit the appeal. Pacillas Decl. ¶ 12, Ex. D.

On March 22, 2012, Plaintiff submitted an appeal and three Confidential Disclosure Forms. The appeal alleged due process violations regarding the actions of Defendant Niehus in submitting Plaintiff's gang validation package. The appeal was received by the appeals coordinator on March 26, 2012, and given Log Number CSPC-7-12-01633. Pacillas Decl. ¶ 13.

On March 30, 2012, the appeal was rejected and returned to Plaintiff because he attached a foreign article to his appeal. The letter also explained that the appeal was not timely because the Confidential Disclosure Forms he was appealing were dated February 16, 2012, and the appeal was not received until March 26, 2012. Plaintiff was instructed to remove the foreign article and explain the delay in submitting the appeal. Pacillas Decl. ¶ 13, Ex. E.

On April 6, 2012, Plaintiff resubmitted CSPC-7-12-01633 and explained the delay. However, his explanation was insufficient and the appeal was rejected. On April 17, 2012, the appeal was

returned to Plaintiff and he was provided another opportunity to explain or document his late appeal. Pacillas Decl. ¶ 14, Ex. F.

On April 26, 2012, Plaintiff resubmitted CSPC-7-12-01633. However, on May 3, 2012, it was again rejected because he submitted screen out letters from three different appeals. Pacillas Decl. ¶ 15, Ex. G.

On May 11, 2012, Plaintiff resubmitted CSPS-7-12-01633 for the fourth time. On May 18, 2012, the appeal was cancelled because Plaintiff "continued to submit a rejected appeal while disregarding staff's previous instructions to correct the appeal." The letter also stated that the appeal was cancelled due to "[his] failure to follow instructions of previous CDCR 695 dated 5/3/12." The letter instructed Plaintiff that a cancelled appeal cannot be resubmitted, but that a separate appeal could be filed on the cancellation decision. Pacillas Decl. ¶ 16, Ex. H. Plaintiff did not file a separate appeal about the cancellation. Pacillas Decl. ¶ 18.

Plaintiff attempted to seek habeas relief regarding his access to the inmate appeals process concerning the appeals he submitted against Defendant Niehus. Req. Jud. Notice, Ex. O.[4] In his habeas petition to the Kings County Superior Court, Plaintiff attached the four screen out letters attached to his Second Amended Complaint, as well as the actual appeals. Req. Jud. Notice, Ex. O.

The Kings County Superior Court rejected Plaintiff's argument that he was denied the ability to demonstrate exhaustion. The court explained that each of Plaintiff's appeals had been addressed by staff, and to the extent that Plaintiff disagreed with the basis for a decision, he was still required to follow the applicable regulations by resubmitting his appeal and/or complying with the requirements. Req. Jud. Notice, Ex. O.

In his Second Amended Complaint, Plaintiff states that he could not file a grievance on Defendant Niehus because the appeals coordinator would not let him file one, denying his right to access the court. ECF No. 20, at 2.

---

[4] Defendants' request for judicial notice is granted. The Court may take judicial notice of court records in other cases. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

*Defendant Matta*

Plaintiff alleges that on August 29, 2012, he received the August 9, 2012, Chrono authored by Defendant Matta for Plaintiff's initial SHU review.  ECF No. 20, at 41.  He contends that Defendant Matta improperly included false information about his arrest record in the Chrono.  ECF No. 20, at 42.

Plaintiff filed a staff complaint against Defendant Matta on September 3, 2013.  Pacillas Decl. ¶ 18, Ex. I.  The appeal, Log Number CSPC-6-12-06338, was denied at the First Level on October 4, 2012.  Pacillas Decl. ¶ 18, Ex. J.  Plaintiff submitted the appeal for Second Level review on October 22, 2012, but it was rejected and returned to Plaintiff on November 19, 2012, because it was missing necessary supporting documents.  The screen out letter informed Plaintiff that he had thirty days to attach documents and resubmit his appeal.  Plaintiff did not resubmit this appeal at any level.  Pacillas Decl. ¶ 18, Ex. K.

In his Second Amended Complaint, Plaintiff acknowledges that his appeal against Defendant Matta was rejected at Second Level.  ECF No. 20, at 2.

IV.     **DISCUSSION**

A.     Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  During the relevant times, a prisoner must proceed through three formal levels of review, culminating in a third-level decision.  Cal. Code Regs. tit. 15, § 3084.1(b).  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

B.     Analysis

It is undisputed that the appeals cited by Defendants- 7-12-00910, 7-12-01213 and 7-12-01633, did not exhaust Plaintiff's claim against Defendant Niehus.  It is also undisputed that Plaintiff did not resubmit his appeal filed against Defendant Matta after it was screened out at the Second Level.  Defendants have therefore carried their burden of showing that Plaintiff did not exhaust his available

7

remedies.  The burden now shifts to shifts to Plaintiff to demonstrate circumstances that made the administrative remedy procedure unavailable.

*Defendant Niehus*

Plaintiff now alleges that that COR-13-08135, attached to his opposition as Exhibit A, exhausted his claims against Defendant Niehus.  However, this appeal does not exhaust the claims against Defendant Niehus for two reasons.

First, the subject matter has nothing to do with Plaintiff's retaliation claim against Defendant Niehus.  In the appeal, dated December 3, 2013, Plaintiff asks why he was deemed to be a threat to the safety and security of the institution and requests that he be shown the evidence to support such a finding.  The appeal does not mention Defendant Niehus, nor does it raise Plaintiff's theory of retaliation.  Therefore, while this appeal was reviewed through the Third Level and denied on July 14, 2014, it did not place the prison on notice of his claim against Defendant Niehus.  Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010).

Second, as noted above, Plaintiff didn't even file COR-13-08135 until December 3, 2013, and he did not receive a decision at the Third Level until July 14, 2014.  It is well settled that exhaustion must occur prior to filing an action, and that an inmate may not exhaust while the action is pending.  McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Thus, even if the subject matter could be said to relate to Plaintiff's claim against Defendant Niehus, he filed the grievance one year after he initiated this action.

Accordingly, the Court finds that Plaintiff has not exhausted his administrative remedies for his retaliation claim against Defendant Niehus.

*Defendant Matta*

In his opposition, Plaintiff contends that his appeal filed against Defendant Matta was improperly screened out at the Second Level, therefore preventing him from exhausting his administrative remedies.

To fall within this exception, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust

8

the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.  Sapp v. Kimbrell, 623 F.3d 813, 823-24 (9th Cir. 2010)

Here, Plaintiff simply states that the screen out at the Second Level was improper.  He seems to disagree with the instruction to submit further documentation, and argues that the only document needed was the 128G Classification Chrono.

It is undisputed that Plaintiff's appeal against Defendant Matta, CSPC-6-12-06338, was denied at the First Level and screened out at the Second Level.  The November 19, 2012, screen out letter explained that the appeal was missing supporting documents, and that Plaintiff had thirty days to attach the documents and resubmit the appeal.  It is further undisputed that Plaintiff did not do so.

Plaintiff's argument fails because even if he disagreed with the reviewer's finding that additional documentation was needed, he did not exhaust all remedies that were available to him. Plaintiff states that the screen out letter did not state which additional documents were necessary, so he resubmitted the appeal "asking what specific paper(s) were needed/missing." ECF No. 32, at 4.  He states that the appeal was rejected a second time on November 19, 2012.[5]  After this, however, Plaintiff took no additional action, even though the November 19, 2012, screen out letter told him to resubmit the appeal with necessary documentation.

Moreover, even if Plaintiff had previously inquired about what documents were necessary, he abandoned the appeal after the November 19, 2012, screen out.

The Court also notes that even if Plaintiff thought that he did not need to submit additional documents, this does not mean that the appeal was screened out for improper reasons.  Plaintiff's remedy was to continue with the appeals process by resubmitting the appeal with additional documents, and perhaps eventually appealing a cancellation.  Instead, Plaintiff did not take any action after the November 19, 2012, letter with further instructions.  Under these facts, the Court cannot find

---

[5]  The Court could not find evidence of Plaintiff's inquiry as to what documents were necessary.  He states that the appeal was rejected at the Second Level on October 29, 2012, and he then resubmitted the appeal asking what specific papers were needed.  He states that the appeal was rejected a second time on November 19, 2012.  Plaintiff cites to Exhibits D and E, though no such exhibits are attached to his opposition.

9

that Plaintiff's administrative remedies were "effectively unavailable."  <u>Sapp v. Kimbrell</u>, 623 F.3d at 823.

## V.     FINDINGS AND RECOMMENDATIONS

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment be GRANTED and that the claims against Defendants Niehus and Matta be DISMISSED WITHOUT PREJUDICE for failure to exhaust.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within fourteen (14) days from the date of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**November 17, 2015**__          _____/s/ *Dennis L. Beck*
                                                        UNITED STATES MAGISTRATE JUDGE