UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. JONES,<br><br>             Plaintiff,<br><br>   v.<br><br>MAXFIELD,<br><br>             Defendant. | No. 1:12-cv-01963 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>(Document 54)<br><br>THIRTY-DAY OBJECTION DEADLINE<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR EVIDENTIARY HEARING<br>(Document 55) |

   Plaintiff Mark A. Jones ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on December 3, 2012. It is proceeding on his Second Amended Complaint against Defendant Maxfield for retaliation in violation of the First Amendment.[1]

   Defendant Maxfield filed the instant motion for summary judgment on March 1, 2016.[2] In opposition, Plaintiff filed a motion for an evidentiary hearing. Defendant filed a reply, along

///

---

[1] Defendants Niehus and Maxfield were dismissed on February 4, 2016, after the Court granted their motion for summary judgment based on Plaintiff's failure to exhaust.

[2] Defendant's motion included the required notice pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).

1

with evidentiary objections, on June 28, 2016. The motion is ready for decision pursuant to Local Rule 230(l).

## I.    LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, she need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets her initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine

issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS[3]

At all times relevant to Plaintiff's claims against Defendant Maxfield, he was housed at the California State Prison-Corcoran's ("Corcoran") Administrative Segregation Unit ("Ad-Seg") and the Security Housing Unit ("SHU").

Plaintiff alleges that Defendant Maxfield retaliated against him after he confronted her "with the facts of his gang affiliation and that he is no gang member."  ECF No. 20, at 28.  On May 20, 2012, Plaintiff showed Defendant two CDCR 128G chronos that demonstrated that he was not a Black Guerilla Family ("BGF") member.

Defendant Maxfield then became angry with Plaintiff and started putting "lies" on his CDCR 128G Chrono to make his arrest record look worse.  ECF No. 20, at 28.  Specifically, Plaintiff contends that Defendant Maxfield placed an "R" suffix on his chrono so that he would be transferred to a higher security prison.

Plaintiff filed his first grievance on August 13, 2012.  Plaintiff alleges that Defendant Maxfield repeatedly threatened to transfer him for filing a grievance about his BGF membership.

///
///
///
///
///
///

---

[3] Only the allegations against Defendant Maxfield remain relevant.

## III. UNDISPUTED MATERIAL FACTS[4]

Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was incarcerated at Corcoran from March 9, 2011, through March 4, 2014. Plaintiff was a Level IV inmate while housed at Corcoran and was housed in Ad-Seg from February 2, 2012, through July 30, 2012, and the SHU from July 30, 2012, until his transfer to Pelican Bay State Prison ("Pelican Bay") on March 7, 2014. Pl.'s Dep. 15:20-16:17 (attached as Ex. I to Mayer Decl.).

During all relevant times, Defendant Maxfield worked as Corcoran's Ad-Seg Correctional Counselor I ("CC-I"). Maxfield Decl. ¶ 2. Her duties included reviewing an inmate's file and making placement recommendations to the Institutional Classification Committee ("ICC"). Maxfield Decl. ¶ 4. The ICC would then vote on the recommendations and send them to the Classification Staff Representative ("CSR") for endorsement. Maxfield Decl. ¶ 5.

On February 2, 2012, Plaintiff was transferred from Corcoran's Level IV General Population to Ad-Seg based on an investigation into his association/affiliation with the BGF prison gang. A validation package was submitted to the Office of Correctional Safety ("OCS") for validation review. Defendant Maxfield was not involved in this process. Maxfield Decl. ¶ 9.

Based on Plaintiff's transfer to Ad-Seg, Defendant Maxfield was his assigned CC-I and caseworker. Maxfield Decl. ¶ 10; Pl's Dep. 62:18-63:2.

///

///

///

---

[4] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 56-260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified Second Amended Complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, because Plaintiff's opposition was not verified, it cannot be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006). Plaintiff also submitted his declaration in support of his opposition, but he again failed to sign the declaration under penalty of perjury.

4

Defendant Maxfield met with Plaintiff before his initial Ad-Seg Review Committee to explain the Committee process and discuss what her initial recommendations to the Committee would be.  Maxfield Decl. ¶ 10; Pl.'s Dep. 63:8-13.[5]

During Plaintiff's February 16, 2012, Initial Ad-Seg Review Committee hearing, Defendant Maxfield was the assigned Recorder for this ICC.  The ICC elected to refer Plaintiff's case to the CSR, recommending that Plaintiff be retained in Ad-Seg for an additional ninety days pending the gang re-validation process by OCS.  Plaintiff disagreed with his placement in Ad-Seg and the gang validation process.  Maxfield Decl. ¶ 10, Ex. A.

On April 5, 2012, Plaintiff was re-validated as a member of the BGF.  At that time, validated gang members were typically housed in either Corcoran's SHU or Pelican Bay's SHU to serve their indeterminate SHU terms.  Maxfield Decl. ¶¶ 12, 13, Ex. C.

On April 26, 2012, another ICC was held based on Plaintiff's validation.  Defendant Maxfield was Plaintiff's caseworker and Recorder for this ICC.  The ICC elected to refer Plaintiff's case to CSR, recommending transfer to Corcoran's SHU, with an alternate recommendation to Pelican Bay's SHU, for an indeterminate SHU term.  Plaintiff disagreed with the indeterminate SHU term and with his gang validation.  Maxfield Decl. ¶ 14, Ex. D.

After Plaintiff's April 26, 2012, ICC, Defendant Maxfield's supervisor, CC-II Diaz, pulled Plaintiff's case file and ordered Defendant Maxfield to conduct a mandatory review of his Record of Arrest and Prosecution ("RAP") sheet and inquire into the May 19, 1978, arrest listed on Plaintiff's RAP sheet.  Maxfield Decl. ¶ 15.

Defendant Maxfield noted on Plaintiff's RAP sheet that he was arrested on May 19, 1978, in Hanford, California, for violating Penal Code section 220, assault to commit rape/robbery/etc.  Maxfield Decl. ¶ 16, Ex. E.  She further noted that an "R" suffix review had never been

///

---

[5] Plaintiff contradicts himself as to the first time he met Defendant Maxfield.  During his deposition, he states that he met her for the first time when she came and asked a few questions, and notified him that he'd be going to ICC.  Pl.'s Dep. 63:6-13.  Later during his deposition, and in his Second Amended Complaint, he states that he did not meet her prior to May 20, 2012.  Pl.'s Dep. 63:14-15; ECF No. 20, at 28.  When they first met is not relevant to the disposition of this motion, as discussed below.

5

conducted on Plaintiff's file, even though his RAP sheet indicated an arrest that required a mandatory "R" suffix review. Maxfield Decl. ¶16, Ex. E.

An "R" suffix review can be conducted at any time that an inmate is in CDCR custody. This review and affixation, however, is often done when an inmate is first received into CDCR custody. Maxfield Decl. ¶ 17. An "R" suffix is affixed to an inmate's custody designation to ensure the safety of inmates, correctional personnel and the general public when an inmate has a history of specific sex offenses as outlined in Penal Code section 290. An arrest or conviction for assault to commit rape/robbery/etc., is an offense outlined in Penal Code section 290, and mandates an "R" suffix review. Maxfield Decl. ¶ 18.

Plaintiff alleges that he confronted Defendant Maxfield on May 20, 2016, with the facts that he could not be a gang member by showing her two CDC 128G chronos.[6] Plaintiff contends that Defendant Maxfield was angry about this confrontation and "started putting lies on his CDC 128G" in order to get him transferred to a "more dangerous prison." ECF No. 20, at 28; Pl.'s Dep. 63:16-65:2.

On May 21, 2012, Defendant Maxfield requested an arrest report regarding Plaintiff's May 19, 1978, arrest for PC 220 (assault to commit rape/battery/etc.) from the Hanford Police Department. Maxfield Decl. ¶ 19.

On May 24, 2012, Defendant Maxfield presented Plaintiff, and his case factors, to the ICC. The ICC again elected to refer Plaintiff's case to CSR, recommending transfer to the Corcoran SHU, with an alternate recommendation to Pelican Bay's SHU, for an indeterminate SHU term based on his re-validation as a BGF member. The ICC also noted that an arrest report was requested on May 21, 2012, from the Hanford Police Department regarding Plaintiff's arrest on May 19, 1978, and that an "R" suffix review would occur upon receipt of the arrest report. Maxfield Decl. ¶ 20, Ex. F.

///

---

[6] In his declaration attached to his opposition, Plaintiff gives a different date for this meeting. As the Court explained above, however, his declaration is not signed under penalty of perjury and does not constitute evidence to oppose summary judgment. In any event, the exact date of the meeting is not relevant to the analysis, as will be discussed below.

On May 29, 2012, Defendant Maxfield learned that records from the Hanford Police Department that are over ten years old are destroyed. Therefore, no arrest records regarding Plaintiff's May 19, 1978, arrest existed. Because there was no arrest record, it was not possible to conduct an "R" suffix review. Maxfield Decl. ¶ 20, Ex. G.

On June 21, 2012, Plaintiff was again before the ICC and Defendant Maxfield was his caseworker. At this ICC, the committee again elected to refer Plaintiff's case to CSR, recommending transfer to the Corcoran SHU, with an alternate recommendation to Pelican Bay State Prison's SHU, for an indeterminate SHU term based on his re-validation as a BGF member. The ICC also noted that no arrest report was available from the Hanford Police Department regarding Plaintiff's May 19, 1978 arrest. Therefore, there was no information to conduct an "R" suffix review. Maxfield Decl. ¶ 22, Ex. G.

On July 16, 2012, CSR Escobar endorsed Plaintiff to Pelican Bay's SHU to serve an indeterminate SHU term based on his validation as a BGF member. CSR Escobar also noted that an "R" suffix was not assessed to Plaintiff's custody designation. Maxfield Dec. ¶ 23, Ex. H.

At no time was an "R" suffix ever affixed to Plaintiff's custody designation. An "R" suffix was only referenced in his May 24, 2012, and June 21, 2012, Classification 128G Chronos, indicating that there was an "R" suffix review. Maxfield Decl. ¶ 23, Ex. F, G and H; Pl.'s Dep. 39:23-40:8.[7]

Plaintiff began serving his SHU term at Corcoran on July 30, 2012, while he awaited transfer to Pelican Bay. Once he entered the Corcoran SHU, Defendant Maxfield was no longer his caseworker, and she had no further contact with Plaintiff as either his caseworker or CC-I. Maxfield Decl. ¶ 24.

Plaintiff filed his first grievance against Defendant Maxfield regarding his transfer to Pelican Bay's SHU on August 13, 2012. ECF No. 20, ag 28; Pl.'s Dep. 66:17-20.

///

---

[7] Plaintiff admits during his deposition that an "R" suffix was never attached to his custody designation, and that a very recent chrono would not reference an "R" suffix. However, he frames the issue as the *reference* to a possible "R" suffix on a chrono. Pl.'s Dep. 38:11-40:8. Regardless of how Plaintiff wants to characterize his claim, it remains undisputed that an "R" suffix was never attached to his custody designation.

**D.     DISCUSSION**

       1.     First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

       a.     *Timing of Events*

Plaintiff alleges that Defendant Maxfield became upset when he questioned her about his gang validation, and then retaliated against him by placing an "R" suffix on his chrono so that he would be transferred to a higher security prison. However, the undisputed facts show that the housing recommendations were made prior to April 26, 2012, almost a month before the date Plaintiff contends that Defendant Maxfield became angry and began retaliating against him. The housing recommendations *remained the same* at the May and June ICC hearings.

To the extent that Plaintiff suggests that his August 2012 grievance against her caused any retaliation, such a conclusion is not possible given the timing of the events. In his opposition, Plaintiff vaguely asserts that Defendant Maxfield retaliated against him for filing "a lot of grievances." ECF No. 55, at 5. However, "[m]ere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014).

///

///

b. *Protected Conduct*

Even if the timing of the incidents supported a nexus between the allegedly protected conduct and the retaliatory action, the undisputed facts show that Plaintiff's discussion with Defendant Maxfield about his gang affiliation is not the type of speech protected by the First Amendment.

It is well settled that prisoners do not have the same First Amendment rights as a non-prisoner. See Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." Id. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus, a prisoner's First Amendment claim "must be analyzed in terms of the legitimate policies and goals of the corrections system ...." Id.

Here, Plaintiff testified that he was "explaining to her, while she was making the accusations about [him] being a BGF member, did she look at these chronos[?]" Pl.'s Dep. 65:9-11. In his Second Amended Complaint, Plaintiff states that he "confronted" her and showed her the chronos. ECF No. 20, at 28. In the prison context, this type of direct, confrontational speech "presents a danger of a disturbance and a disruption to institutional order and discipline that a written grievance does not." Nunez v. Ramirez, 2010 WL 1222058, *5 (S.D. Cal. 2010) (finding that the statement, "If you saw who was drinking, why don't you address that person instead of disrespecting everybody" was not protected speech); see also Brodheim v. Cry, 584 F.3d 1262, 1272-73 (9th Cir.2009).

c. *Legitimate Penological Goal*

The Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner, 515 U.S. 472, 482, 115

///

S.Ct. 2293 (1995)). The burden is on Plaintiff to demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of." Pratt, 65 F.3d at 808.

Plaintiff argues that Defendant Maxfield retaliated against him by trying to place him in a more restrictive prison- Pelican Bay- by placing an "R" suffix in his file. However, the undisputed facts show that Plaintiff was validated as a prison gang member in April 2012, and at the time of the events at issue, validated gang members were typically housed in either Corcoran's SHU or Pelican Bay's SHU. Plaintiff disagreed with his validation, but his disagreement does not transform Defendant Maxfield's legitimate penological recommendations into retaliatory actions.

Additionally, the recommendation was placement in the Corcoran SHU, with an *alternate* recommendation to Pelican Bay. Similarly, this was only a recommendation to the ICC. The ICC then voted on the recommendation and the decision to transfer Plaintiff to Pelican Bay was ultimately made by a CSR.

Turing to the "R" suffix review, Plaintiff is correct that the May 24, 2012, and June 21, 2012, 128G Chronos referenced a possible "R" suffix review. The undisputed facts show that Defendant Maxfield was ordered by her supervisor to review Plaintiff's RAP sheet and conduct the review, if warranted. Title 15 regulations allow for this review to be conducted at any time. 15 Cal. Code Regs. § 3371.(b)(3). Plaintiff infers that because this review had not been conducted during the past 37 years of his incarceration, that the motive could only be retaliatory. However, and especially in light of the legitimate penological interests at stake in ensuring the safety and security of staff and inmates when an "R" suffix is attached, Plaintiff's speculation falls short of providing evidence of a retaliation.[8]

    2.    <u>Plaintiff's Request for Evidentiary Hearing</u>

In his opposition, Plaintiff cites Albino v. Baca, 747 F.3d 1162 (9th Cir. 2013) and Federal Rule of Civil Procedure 43(c) in requesting that this Court conduct an evidentiary hearing. Plaintiff believes that the Court must hold such a hearing to determine Defendant's

---

[8] As explained in the undisputed facts, Plaintiff never received an "R" suffix on his custody designation because the review was not ultimately conducted.

credibility where there are "competing declarations."  ECF No. 55, at 3.  However, on summary judgment, the proper procedure is to deny summary judgment where credibility issues exist and proceed to trial.  Moreover, the procedure set forth in Albino is applicable to motions for summary judgment based on exhaustion, not for summary judgment motions based on the underlying merits.

In any event, there are no credibility issues in this motion.

Plaintiff's request is therefore DENIED.

3. Qualified Immunity

Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established.  Id.  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

As the Court has found that Defendant did not violate a constitutional right, it need not further discuss the issue of qualified immunity.

E. **FINDINGS AND RECOMMENDATIONS**

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant Maxfield's motion for summary judgment be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1  objections must be filed within fourteen (14) days from the date of service of the objections.  The
2  parties are advised that failure to file objections within the specified time may waive the right to
3  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 22, 2016**                              /s/ Dennis L. Beck
                                                UNITED STATES MAGISTRATE JUDGE